UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY ADAMS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JOHN NUNEMAKER, et al.,<br><br>　　　　Defendants. | Case No. 22-cv-02963 EJD (PR)<br><br>**ORDER STAYING PROCEEDINGS AND ADMINISTRATIVELY CLOSING CASE; DENYING MOTION TO PROCEED WITH PSEUDONYM**<br><br>(Docket No. 3) |

　　　　Plaintiff, who is currently being detained at the Corrections Center of Northwest Ohio, filed the instant pro se civil rights action seeking damages for several allegedly unconstitutional acts that occurred in various locations. Dkt. No. 1. Plaintiff filed this action in the Eastern District of California, which transferred the case to this district. Dkt. No. 5. On July 28, 2022, Plaintiff filed an amended complaint which is the operative complaint in this matter. Dkt. No. 10; Fed. R. Civ. P. 15(a)(1). On August 1, 2022, this matter was reassigned to the Undersigned. Dkt. Nos. 11, 12. Plaintiff's motion for leave to proceed in forma pauperis will be addressed in a separate order. Dkt. No. 9.

　　　　Plaintiff has filed a motion to proceed under a pseudonym. Dkt. No. 3.

///

///

## BACKGROUND

Plaintiff filed this action against the Brentwood Police Department ("BPD") in California, several officers of BPD, several agents of Homeland Security Investigations ("HSI") located in California and Ohio, and several private individuals and entities within the news industry at various locations. Dkt. No. 10 at 2-8. Plaintiff alleges claims under 42 U.S.C. § 1983 against state actors, a Monell[1] claim against BPD, claims under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971) against federal actors, and various state tort claims against both state and federal actors and the private individuals and entities. Dkt. No. 10.

The claims are based on the following: (1) an unlawful search of Plaintiff's residence in Lodi, California, on July 29, 2020, and his subsequent unlawful detention; (2) warrantless seizure of items during that search; (3) the issuance of a Ramey warrant which lacked probable cause on July 21, 2020; (4) "out-of-scope warrantless search" of the illegally obtained items; (5) the filing of a criminal complaint charging Plaintiff with exploitation of a minor in the Northern District of Ohio on November 6, 2020; (6) Plaintiff's "false arrest" on May 18, 2021; and (7) his continued "false imprisonment" since the arrest. Dkt. No. 10. Plaintiff's claims include multiple violations of the Fourth and Fourteenth Amendments, violations of state laws, and state torts, i.e., intentional and negligent infliction of emotional distress and defamation. Id.

Based on Plaintiff's allegations, the Court did a search of pending federal criminal matters in the Northern District of Ohio and found the following criminal action: United States of America v. Adams, Case No. 21-cv-00504-JJH-1. The Court may take judicial notice of this judicial proceeding.[2] The defendant is Jeremy David Adams, Booking No.

---

[1] Monell v. Dep't of Social Servs., 436 U.S. 658 (1978).

[2] A district court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007) (internal quotation marks and citations omitted) (granting request to take judicial notice in § 1983 action of five prior cases in which plaintiff was pro se litigant, to counter her argument that she deserved special treatment because of her pro se status).

202102119, who is currently confined at the Corrections Center of Northwest Ohio; this information matches the information provided by Plaintiff in his complaint.[3] The docket shows that a criminal complaint was filed on November 6, 2020, alleging that the named defendant violated 18 U.S.C. § 2251(a) (sexual exploitation of minor (production of child pornography)). Id., Dkt. No. 1. The docket also indicates that defendant was arrested on May 18, 2021. Lastly, Plaintiff's amended complaint lists 67 articles published by various media sources regarding the investigation leading to his arrest, which leaves little doubt that he is the defendant in that federal criminal action. Dkt. No. 10 at 27-32. Accordingly, Plaintiff is clearly a defendant in a pending federal prosecution.

## DISCUSSION

### A. Standard of Review

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See id. at § 1915A(b). Pro se pleadings must be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

Except for the replacement of a state actor by a federal actor, actions under 42 U.S.C. § 1983 and Bivens are identical. See Martin v. Sias, 88 F.3d 774, 775 (9th Cir.

---

[3] https://www.ccnoregionaljail.org/offender_search.htm

3

1996); Van Strum, 940 F.2d at 409; see also Wilson v. Layne, 526 U. S. 603, 609 (1999) (qualified immunity analysis same under Bivens and § 1983). Accordingly, when reviewing a Bivens action for which there is no case on point, § 1983 cases may be applied by analogy. See, e.g., Tekle v. United States, 511 F.3d 839, 844 (9th Cir. 2007) (applying § 1983 cases to analysis of Bivens claim that officers used excessive force under Fourth Amendment, and of qualified immunity defense to same claim). But note that the Supreme Court has restricted the constitutional violations for which a Bivens claim may be asserted at all in Ziglar v. Abbasi, 137 S. Ct. 1843, 1857 (2017).[4]

///

**B.** **Analysis**

As part of his action, Plaintiff is attempting to challenge a search warrant and seizure of evidence which is being used in the pending criminal prosecution against him in the Northern District of Ohio. Plaintiff is also challenging his detention incident to the search warrant and the later arrest, which he alleges is a "false arrest." See supra at 2. Liberally construed, it appears that he states cognizable claims under § 1983 for the violation of his rights under the Fourth and Fourteenth Amendments, and a potential Bivens claim for the violation of his Fourth Amendment rights.

If a plaintiff files a § 1983 false arrest claim before he or she is convicted, or files any other claim related to rulings that likely will be made in a pending or anticipated

---

[4] With regards to Bivens claims, the Supreme Court has held on three occasions that, even absent statutory authority, a private right of action for damages may be implied from the Constitution itself for constitutional violations by federal employees or their agents. See Bivens, 403 U.S. at 392-97 (4th Amendment unreasonable search and seizure); Davis v. Passman, 442 U.S. 228, 248-49 (1979) (5th Amendment Due Process Clause gender discrimination); Carlson v. Green, 446 U.S. 14, 17-19 (1980) (8th Amendment inadequate medical treatment). But "[t]hese three cases -- Bivens, Davis, and Carlson – represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." Ziglar v. Abbasi, 137 S. Ct. 1843, 1855 (2017). The Court has made clear that "expanding the Bivens remedy is now a 'disfavored' judicial activity," id. at 1857 (citation omitted), and will not be available if there are "'special factors' counseling hesitation in the absence of affirmative action by Congress," id. at 1848 (citation omitted). The Court has emphasized that "for almost 40 years, we have consistently rebuffed requests to add to the claims allowed under Bivens." Hernandez v. Mesa, 140 S. Ct. 735, 743 (2020).

criminal trial, it is within the power of the district court, and accords with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. Wallace v. Kato, 549 U.S. 384, 393-94 (2007). If the plaintiff is then convicted, and if the stayed civil suit would impugn that conviction, Heck v. Humphrey, 512 U.S. 477 (1994), requires dismissal; otherwise, the case may proceed. Id. at 394.

The Supreme Court held in Heck, 512 U.S. 477, that a plaintiff cannot bring a civil rights action for damages for a wrongful conviction unless that conviction already has been determined to be wrongful. See id. at 486-87. The Heck rule was later held to cover equitable relief also; that is, if success in the § 1983 action would necessarily demonstrate the invalidity of the confinement or its duration, the § 1983 action is barred regardless whether the relief sought is damages or equitable relief. See Wilkinson v. Dotson, 544 U.S. 74, 81 (2005); cf. Skinner v. Switzer, 561 U.S. 521, 523 (2011) (claim seeking DNA evidence does not necessarily imply invalidity of conviction because such evidence may prove incriminatory or inconclusive; Heck does not bar bringing such a claim under § 1983). A conviction may be determined to be wrongful by, for example, being reversed on appeal or being set aside when a state or federal court issues a writ of habeas corpus. See Heck, 512 U.S. at 584-87. The Heck rule also prevents a person from bringing an action that -- even if it does not directly challenge the conviction -- would imply that the conviction was invalid. The practical importance of this rule is that a plaintiff cannot attack his conviction in a civil rights action; the conviction must have been successfully attacked before the civil rights action is filed. The Heck rule bars an action only if there is an existing conviction. Heck does not encompass the principle that "an action which would impugn an anticipated future conviction cannot be brought until that conviction occurs and is set aside." Wallace, 549 U.S. at 393 (emphasis in original). Nonetheless, the claim should not go forward if the plaintiff's criminal proceedings are still pending; rather, the court can "stay the civil action until the criminal case or the likelihood of a criminal case is ended." See id. at 394.

5

1       The rationale of Heck applies to Bivens actions as well as those brought under § 1983. See Martin, 88 F.3d at 775. If a judgment in favor of a Bivens plaintiff would necessarily imply the invalidity of his or her sentence, the plaintiff must show that the sentence has been previously invalidated. See id.

      Here, Plaintiff is challenging the validity of a search of his home, his detention, and later arrest based on evidence that was illegally obtained. A finding in his favor would necessitate a finding that his constitutional rights were violated, which would necessarily invalidate his criminal conviction if one occurs. Plaintiff's claims should not go forward because his criminal proceedings are still pending; rather, "it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." See Wallace v. Kato, 549 U.S. at 393-94. Accordingly, the court will stay further proceedings in this matter until Plaintiff's criminal proceedings have concluded. Because Plaintiff's state law claims are related to the § 1983 and Bivens claims, the Court will exercise supplemental jurisdiction over those claims for now. 28 U.S.C. § 1367(a).

## C.   Motion to Proceed Under Pseudonym

      Plaintiff filed a motion to proceed with a pseudonym on the grounds that the subject matter of the litigation involves accusations of a sex crime "that may bring attention to defendants' earlier defamation against plaintiff such that [he] suffers further economic harm." Dkt. No. 3 at 1. Plaintiff also alleges that the "public dissemination" has "incited vigilantes, threats of death and risk of harm to his family." Id. He also expresses concern that the identify of an innocent third party "K.A." may become easily known because "the fact they were dating for two years is well known." Id.

      The "normal presumption" is that parties must use their real names to litigate. Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate, 596 F.3d 1036, 1042 (9th Cir. 2010) ("Kamehameha Schools"); Fed. R. Civ. P. 10(a). This follows from the public's interest in having an open judicial system and, when a plaintiff wants to conceal his identity from a defendant, from confrontation concerns. Kamehameha Schools, 596 F.3d

at 1042. Federal courts have allowed parties to plead anonymously when "special circumstances justify secrecy." Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1067 (9th Cir. 2000). Pseudonyms may be used when a party requires protection from "harassment, injury, ridicule, or personal embarrassment." Id. at 1067-68 (quoting United States v. Doe, 655 F.2d 920, 922 n.1 (9th Cir. 1981) (using pseudonym because the prison inmate "faced the serious risk of bodily harm" as a government informant if the facts relating to his criminal case became known)). The party's interest in proceeding anonymously must be weighed against any prejudice to the opposing party and the public's interest in having open courts. Id. at 1068.

The Ninth Circuit has outlined a five-factor test to balance these competing interests when there is a perceived risk of retaliation: "(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, . . . (3) the anonymous party's vulnerability to such retaliation, (4) the prejudice to the opposing party, and (5) the public interest." Kamehameha Schools, 596 F.3d at 1042 (internal quotation marks omitted) (relying on the test developed in Advanced Textile Corp.). Often, the first two factors are intricately related and should be addressed together. See Kamehameha Schools, 596 F.3d at 1043.

Under the first and second factors, Plaintiff has not established that there is a real threat of serious harm due to this action and that his fears are reasonable. He makes a vague reference to economic harm and threats by vigilantes. However, there is already a pending federal criminal action against him, which is already in the public eye as described above. See supra at 2-3. The evaluation of the "reasonableness of the anonymous party's fears," Kamehameha Schools, 954 F.3d at 1042, is done in relation to the ultimate question of whether it supports allowing the plaintiff to proceed as a John Doe plaintiff. In other words, if a threatened harm will occur with or without the John Doe designation, the fear of the threatened harm does not weigh in plaintiff's favor on the second factor. Here, Plaintiff's fears that he will be subject to harm unless he proceeds anonymously in this action are not reasonable because the facts of his pending federal prosecution are already a

matter of public record and well known, as indicated by the numerous news articles regarding his case. For the same reasons, Plaintiff's fears regarding the identify of "K.A." becoming known through this action are also unreasonable.

The third factor to consider is Plaintiff's vulnerability to the feared retaliation. Plaintiff's reference to "economic harm" is insufficient to indicate what type of retaliation he fears in this regard. He also asserts that he fears threats to himself and his family. Threats to his family is not relevant to this third factor. With regards to Plaintiff, he is a pretrial detainee at a federal facility in Ohio, and therefore not vulnerable to harm by the public. If the fear of harm is from other inmates, prison officials have ways to protect inmates who are at special risk of harm from other inmates, e.g., by transferring to a different facility, special needs yards, or protective custody. Accordingly, this third factor does not weigh in favor of Plaintiff.

The fourth factor, prejudice to defendants, cannot be fully analyzed today in light of the fact that defendants have not been served or appeared in this action. The test under Kamehameha Schools describes the five-factor test as applying when the defendant objects to a plaintiff's request to proceed anonymously. However, seeking a response from defendant is not practical because defendants have not been served with process or appeared in this action, and may not even be aware of this miscellaneous action.

Fifth, the public interest weighs in favor of allowing public access to this action which involves allegations against law enforcement for violating a citizen's constitutional rights during the course of an investigation. If Plaintiff's allegations are true, then the public has a right to know when law enforcement has failed in their duties and responsibilities to the public in the just investigation and prosecution of crimes and have crossed the light to violating the rights of the public whom they are supposed to protect. Furthermore, the public also has a right to know about the court's adjudication of cases of persons' who have been unjustly charged and prosecuted.

Having considered the several factors from Kamehameha Schools, the Court concludes Plaintiff's motion to proceed anonymously must be DENIED. Plaintiff's

interest in proceeding anonymously is outweighed by the public's interest in having open courts.

## CONCLUSION

For the reasons set forth above, this action is **STAYED**. Within thirty (30) days of the date on which he is acquitted, convicted, or charges are dismissed, Plaintiff must file a motion to lift the stay. If Plaintiff is convicted and if the claims would impugn that conviction, the action will be dismissed; otherwise, his claims may then proceed.

In light of the stay, Plaintiff should not file any more documents in this action until the federal criminal proceedings have concluded.

Plaintiff's motion to proceed under a pseudonym is **DENIED**. Dkt. No. 3.

The Clerk shall **ADMINISTRATIVELY CLOSE** the case.

This order terminates Docket No. 3.

**IT IS SO ORDERED.**

**Dated:** October 4, 2022

EDWARD J. DAVILA
United States District Judge